## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

STACEY S.,

                    Plaintiff,    1:21-cv-20433-NLH

v.                        **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]

_____

**APPEARANCES:**

TIMOTHY JOSEPH MELLO
JACOBS, SCHWALBE AND PETRUZZELLI, PC
10 MELROSE AVE
SUITE 340
CHERRY HILL, NJ 08003

      *On behalf of Plaintiff*

KRISTINA CAROL EVANS COLE
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

      *On behalf of the Commissioner*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.

Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  It is also before the Court under § 1614(a)(3)(A) of the Social Security Act, as amended 42 U.S.C. § 1382c(a)(3(A), regarding Plaintiff's application for supplemental security income ("SSI")[3] under Title XVI of the Social Security Act.  42 U.S.C. § 1381 *et seq.*

The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, March 1, 2018.  For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On June 15, 2018, Plaintiff filed an application for DIB as well as an application for SSI, alleging that she became disabled on March 1, 2018.  Plaintiff claims that she cannot work because of her impairments of posttraumatic stress disorder ("PTSD"), major depressive disorder, borderline personality

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] Supplemental Security Income is a program under the Social Security Act that provides supplemental security income to individuals who have attained age 65, or are blind or disabled. 42 U.S.C. § 1381 et seq.

disorder, a neck injury, post concussive disorder, and hyperglycemia.[4]  (R. at 251).

Plaintiff's claim was denied initially and upon reconsideration.  (R. at 15).  Plaintiff requested a hearing before an ALJ which was held on February 9, 2021.  (Id.)  On February April 6, 2021, the ALJ issued an unfavorable decision.  (Id.).  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on October 19, 2021 making the ALJ's decision final.  (Id. at 1-3).  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.[5]  Ventura v. Shalala,

---

[4] On the alleged onset date, Plaintiff was 18 years old, which is defined as a "younger person (age 18-49).  20 C.F.R. § 404.1563.

[5] The standard for determining whether a claimant is disabled is the same for both DIB and SSI.  See Rutherford v. Barnhart, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted).  DIB regulations are found at 20 C.F.R. §§ 404.1500-404.1599, and the parallel SSI regulations are found at 20 C.F.R. §§ 416.900-416.999, which correspond to the last two digits of the DIB cites (e.g., 20 C.F.R. § 404.1545 corresponds with 20 C.F.R. § 416.945).  The Court will provide citations only to the DIB regulations.  See Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the

3

55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

---

regulations respecting disability insurance benefits").

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004).

In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB and SSI**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such

6

work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d
1150, 1153 (3d Cir. 1983).  In the first four steps of the
analysis, the burden is on the claimant to prove every element
of her claim by a preponderance of the evidence.  See id.  In
the final step, the Commissioner bears the burden of proving
that work is available for the Plaintiff: "Once a claimant has
proved that he is unable to perform his former job, the burden
shifts to the Commissioner to prove that there is some other
kind of substantial gainful employment he is able to perform."
Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.
Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since March 1, 2018, Plaintiff's
alleged onset date and that Plaintiff met the insured status
requirement through December 31, 2019.  (R. at 18).  At step
two, the ALJ found that Plaintiff's impairments of torticollis;
pituitary adenoma; neurocognitive disorder; traumatic brain
injury/post-concussive syndrome; postural orthostatic
tachycardia syndrome (POTS); attention-deficit hyperactivity
disorder; depressive disorder; and post-traumatic stress
disorder were severe.[6]  (Id.)  In addition, the ALJ stated that

---

[6] The Court notes that the list of impairments that the ALJ
analyzed is lengthier and somewhat varied compared to the list

he found Plaintiff's impairment of refractive ametropia, with light sensitivity and blurred vision to be non-severe.  (Id.) At step three, the ALJ determined that Plaintiff's impairments individually or in combination with one another did not equal the severity of one of the listed impairments.  (Id. at 18-20).

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the light level,[7] with certain limitations.  (Id. at 20).  At steps four and five, the ALJ determined that Plaintiff could perform work that existed in the national economy such as the jobs of photocopy machine operator, marker, and order caller.  (Id. at 28).

Plaintiff cites to five assignments of error: (1) the ALJ failed to conduct a full and fair hearing and failed to properly develop the record; (2) the ALJ erred by failing to properly incorporate Plaintiff's severe impairments into the RFC; (3) the

---

of impairments that Plaintiff presented in the disability report dated July 3, 2018 that was submitted in connection with Plaintiff's applications. (R. at 248-51).  The Court presumes that from his independent review of the record, the ALJ determined that his list of impairments was most accurate. Indeed, that is consistent with an ALJ's duty to scrutinize the record for evidence of impairments.  Plummer v. Apfel, 186 F.3d 422, 433 (3d Cir. 1999) ("In all cases, however, the ALJ has a duty to consider all evidence of impairments in the record."). Regardless, Plaintiff does not identify as error the ALJ's longer list of impairments.

[7] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

ALJ failed to properly consider Plaintiff's testimony regarding her conditions; (4) the ALJ erred at step 5 by incorrectly addressing an objection about the number of jobs available in the economy; and (5) the appointment of the Commissioner violates the separation of powers clause of the Constitution and makes the ALJ's decision constitutionally defective. (See ECF 10 at 15-38). Separately and finally, Plaintiff argues that the evidence of the record is such that the Court need not remand her case to the Social Security Administration, but may award her benefits on its own. (Id. at 38). The Court takes each argument in turn.

###### i. Whether the ALJ Failed to Conduct a Full and Fair Hearing and Adequately Develop the Record

In arguing that the ALJ erred in developing the record, Plaintiff contends that the ALJ improperly closed the record knowing that material medical information was outstanding. (Id. at 15). The Court disagrees. In order to explain why Plaintiff's argument fails, it is necessary to set forth the timeline of events that occurred following the hearing conducted on February 9, 2021. During the February 9, 2021 hearing, Plaintiff indicated that there was more medical information she was trying to obtain to add to the record and asked that the record be kept open. (R. at 62-63). The ALJ noted reluctance to keep the ALJ open for a long time because this was already an

"aged case" but agreed to keep the record open until February 26, 2022 and to give Plaintiff until then to let him know if there were other records that Plaintiff reasonably thought she could obtain. (Id.) Critically, the ALJ said that he would only take more testimony if any new medical records indicated that such testimony would be necessary. (Id. at 64-65).

On February 25, 2021, Plaintiff wrote to the ALJ to indicate that she was having difficulty obtaining medical records and to ask for the ALJ to issue subpoenas to help her obtain them. (Id. at 383-85). The ALJ did so on March 1, 2021. (Id. at 211-22). On March 15, 2021, an employee of the Social Security Administration called Plaintiff's representative on behalf of the ALJ to indicate that they were having difficulty getting responses to the subpoenas and stated that the ALJ was willing to keep the record open through the close of business on March 19, 2021. (Id. at 386). The employee also indicated that Plaintiff needed to indicate by then if she wanted to request that the record remain open past that date. (Id.) Plaintiff did not write to the ALJ until March 25, 2021, and that letter primarily focused on objections to the vocational expert's (the "VE") testimony and did not directly ask for the record to be kept open. (Id. at 390-92).

As a general matter, the "regulations require that the ALJ solicit from the claimant any evidence that the ALJ finds useful

in making his determination in the spirit of painting a full picture from which the ALJ can render a proper opinion about a claimant's entitlement to disability benefits." Leitch v. Comm'r of Soc. Sec. Admin., No. CIV.A. 07-3863(JAG), 2009 WL 243167, at *14 (D.N.J. Feb. 2, 2009) (citing 20 C.F.R. § 404.1512(d)(1)). Further, is true that an ALJ has "a duty to develop a full and fair record in social security cases," and "an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits." Ventura, 55 F.3d at 902 (citations omitted).  The reason for this duty is that "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails." Id. (citation omitted).

However, that general principle does not require the ALJ to hold the record open indefinitely when to do so would be unreasonable and where he has already held it open for a reasonable amount of time.  Leitch, 2009 WL 243167 at *15 (holding that where an ALJ held the record open for a significant amount of time after the hearing to close the record was not error and that "[t]o require more from the ALJ places the onus on the ALJ to not only ask for additional evidence, but to amass and submit that same evidence for his consideration.

12

Raising the duty of the ALJ to this level clearly conflicts with Congress' intention to impose responsibilities on all parties[.]").

Here, the ALJ kept the record open for over a month after the hearing, issued subpoenas, and gave Plaintiff a chance to ask that the record be held open even longer.  Plaintiff did not write to the ALJ asking for an extension by the March 19, 2021 deadline and this Court cannot say that the ALJ erred by closing the record thereafter.  See Sullen v. Astrue, No. C 10-5898 CW, 2012 WL 851126, at *5 (N.D. Cal. Mar. 13, 2012) (where a claimant was given 30 days after the hearing to submit more evidence but chose not to do so, the ALJ satisfied the duty to develop the record).

Plaintiff did not explain then and does not explain now what those additional records would show and why they were needed for the ALJ to make a decision.  Hickey v. Saul, No. CV 19-1571, 2020 WL 5816965, at *1 n.1 (W.D. Pa. Sept. 30, 2020) ("Under these circumstances, the ALJ was well within her discretion in not keeping the record open for the submission of this evidence, and she fulfilled her duty to develop the record."); Rumpf v. Astrue, No. 11-125-GMS, 2015 WL 4126740, at *7 (D. Del. July 8, 2015) (noting that a showing a prejudice is needed to prevail on a claim that an ALJ failed to adequately develop the record).  To the extent that Plaintiff argues that

13

she did not receive a full and fair hearing and was entitled to a further hearing, she does not explain how or why that would have affected the outcome in this matter.  Rumpf, 2015 WL 4126740 at *7.  Thus, the Court rejects Plaintiff's first assignment of error.

**ii.  Whether the ALJ Erred in Formulating the RFC.**

In arguing that the ALJ erred in formulating the RFC, Plaintiff contends that the analysis is deficient because it does not account for her severe impairments, particularly her mental impairments.  Specifically, Plaintiff contends that the ALJ's conclusion at step 3 that Plaintiff had moderate mental limitations using the Psychiatric Review Technique (the "PRT")[8] is not accounted for in the RFC.  (ECF 10 at 17-24).  In that vein, Plaintiff argues that the ALJ should have addressed "time off task, absences or changes in the work setting" and that the ALJ's RFC conclusion was inconsistent with the medical opinions

---

[8] To properly consider Plaintiff's mental impairments at steps 2 and 3, an ALJ is required to undertake a "Paragraph B" assessment. See Marrollo v. Commissioner of Social Security, 2020 WL 3046317, at *5 (D.N.J. 2020) ("In considering a claimant's mental impairments, an ALJ is required to review paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. A marked limitation is where a claimant's functioning in an area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is where a claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis.").

14

of Dr. Marks and Strauchler, which the ALJ found to be
"generally persuasive." (Id.)

The Court disagrees.  First, despite Plaintiff's
protestations to this contrary, this issue falls squarely within
the ambit of Hess v. Comm'r Soc. Sec., 931 F.3d 198 (3d Cir.
2019).  In Hess, the Third Circuit said that "as long as the ALJ
offers a 'valid explanation,' a 'simple tasks' limitation is
permitted after a finding that a claimant has 'moderate'
difficulties in 'concentration, persistence, or pace.'"  Id. at
211.  This statement encapsulates exactly what happened in the
case at bar.  Here, in the step 3 PRT, the ALJ found that
Plaintiff had a moderate limitation in "understanding,
remembering or applying information" and "concentrating,
persisting or maintaining pace." (R. at 19-20).  The ALJ made
clear that he was accounting for this limitation in his RFC
analysis.  (Id. at 20 ("The following residual functional
capacity assessment reflects the degree of limitation I have
found in the 'paragraph B' mental function analysis.")).

In addition, in the RFC analysis, the ALJ explicitly
referenced other evidence related to cognition and mental
health.  (See id. at 24 ("Neuropsychological exam in May 2019
reflected clear speech, without significant word-finding
difficulty and intact comprehension. . . Subsequent mental status
exams reflected cooperative behavior, and appropriate or good

mood and affect[.]")).  The ALJ explained the "simple task"
limitation by examining the evidence related to Plaintiff's
other abilities and inabilities and explaining what he found
persuasive and why.  (Id. at 22-27);  Hess, 931 F.3d at 210 (the
step 2 and 3 "findings need only be 'adequately conveyed' in the
ALJ's statement of the limitation, not recited verbatim").  That
is sufficient.

Plaintiff's other arguments regarding the ALJ's failure to
make enumerated findings regarding time off task and similar
issues is in effect an argument that the ALJ did not adequately
conduct a function-by-function analysis.  First, the ALJ
explicitly noted that he "considered all symptoms and the extent
to which these symptoms can reasonably be accepted as consistent
with the objective medical evidence and other evidence... [and]
the medical opinions and prior administrative medical
findings[.]"  (R. at 21).  The Court finds that representation
to be borne out in the RFC analysis with the ALJ's rather
exhaustive discussion of the examinations and treatment
Plaintiff has received as well as his discussion of how
Plaintiff's mental and neurological impairments affected her
daily functioning.  (Id. at 22-27).  The ALJ specifically
discussed Plaintiff's mental conditions and her desire post-
onset date to return to school full-time.  (Id. ("Overall, the
evidence shows she retains the ability to understand, remember

16

and sustain basic simple tasks with simple instructions.")).

In order for the ALJ to conduct a proper RFC analysis, no magic set of words or order of analysis is required. Hur, 94 F. App'x at 133 (stating that the ALJ is not required to recite every tidbit of evidence); Lorie H. v. Comm'r of Soc. Sec., No. 1:20-CV-13192-NLH, 2022 WL 2803168, at *6 (D.N.J. July 18, 2022) ("[A]n ALJ does not need to use particular language or adhere to a particular format in conducting her RFC analysis."). The Court finds no error with the ALJ's thorough discussion of Plaintiff's severe and non-severe impairments.

Plaintiff's argument that the ALJ failed to conduct a function-by-function analysis is similarly misplaced. Plaintiff appears to base her argument on SSR 96-8p. SSR 96-8p requires a narrative of how the evidence supports the ALJ's conclusion regarding the RFC. See SSR 96-8p. At a high level, the RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ need not use particular language or adhere to a particular format in conducting her RFC analysis. Ungemach v. Commissioner of Social Security, 2019 WL 3024858, at *4 (D.N.J. 2019) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). SSR 96-8p requires that each function "must be considered," but it does not require every function to be specifically delineated in the RFC. Indeed, SSR 96-8p

17

contemplates that in her "final RFC assessment," an ALJ may assess the functions in combination rather than individually.

While a neat organization of the analysis around each function is preferable, failure by an ALJ to do so is not reversible error where the ALJ explains her RFC findings and those findings are supported by substantial evidence. Malcolm v. Commissioner of Social Security, 2017 WL 5951703, at *19 n.14 (D.N.J. 2017) (noting "where, as here, the ALJ's RFC determination is supported by substantial evidence, and is accompanied by a clear and satisfactory explication of the basis on which it rests, the Third Circuit does not require strict adherence to the function-by-function analysis set forth in Social Security Ruling 96-8p") (internal citation omitted); Chiaradio v. Comm'r of Soc. Sec., 425 F. App'x 158, 161 (3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ assessed what [the claimant] could reasonably do."); Garrett v. Comm'r of Soc. Sec., 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the ALJ's RFC determination, despite the ALJ's failure to perform the precise function-by-function assessment outlined in SSR 96-8p, where the ALJ questioned the claimant about the physical

18

limitations of her prior work, and substantial evidence
supported the ALJ's findings); Bencivengo v. Comm'r of Soc.
Sec., 251 F.3d 153 (Table), [published in full-text format at
2000 U.S. App. LEXIS 38785 at *5] (3d Cir. Dec. 19, 2000)
("Although a function-by-function analysis is desirable, SSR 96-
8p does not require ALJs to produce such a detailed statement in
writing.")).

The Court also disagrees with Plaintiff's characterization
of the ALJ's analysis of Plaintiff's limitations in the RFC
analysis, particularly with the contention that the conclusion
that Plaintiff could perform simple tasks is at odds with his
statement that he found the medical opinions of Drs. Marks and
Strauchler "generally persuasive."  Plaintiff specifically says
that the conclusion is at odds with both doctors' conclusions
that Plaintiff would have difficulty with things like
maintaining pace and being punctual.  (ECF 10 at 23).

But those statements were not made by those doctors —
rather they were made by a different medical evaluator,
apparently named Annamaria Pruscino, and in a very conclusory
manner to boot.  (See R. at 138).  Drs. Marks and Strauchler
opined on Plaintiff's vision and other physical limitations and
nothing in the ALJ's RFC analysis of their opinions is
inconsistent with the ALJ's conclusions on mental limitations.
(Id. at 131-33, 135-37).  It appears that Plaintiff is really

asking this Court to weigh the evidence surrounding Plaintiff's
mental impairments differently than the ALJ.

### iii. Whether the ALJ Properly Considered Plaintiff's Statements

Plaintiff argues that the ALJ improperly discounted her
subjective statements regarding the symptoms of her conditions
such as the fact that she has issues with her vision, focusing,
and neck pain and in doing so failed to follow SSR 16-3p. (ECF
10 at 27-28). While an ALJ must explain why he discounted
subjective accounts of pain or functional limitations, such
accounts must be supported by objective medical records.
Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d
Cir. 1999) (explaining that allegations of pain and
other subjective symptoms must be supported by objective medical
evidence, and an ALJ may reject a claimant's subjective
testimony if he does not find it credible as long as he explains
why he is rejecting the testimony); SSR 16-3p ("In determining
whether an individual is disabled, we consider all of the
individual's symptoms, including pain, and the extent to which
the symptoms can reasonably be accepted as consistent with the
objective medical and other evidence in the individual's record
... Under our regulations, an individual's statements of
symptoms alone are not enough to establish the existence of a
physical or mental impairment or disability."); 20 C.F.R. §

416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence....").

Plaintiff's argument here is again just a request for this Court to weigh the evidence differently than the ALJ did.  In her brief, Plaintiff lists multiple statements that she made during the hearing related to the gravity of her conditions which she contends should have prompted the ALJ to issue a finding of disability.  (ECF 10 at 27-28).  In his Opinion, the ALJ specifically mentioned the limitations that Plaintiff outlined in her testimony but weighed them against other evidence in the record.  (R. at 22-24).  For instance, he discounted Plaintiff's statement that she had headaches that prevented her from working on the basis that her medical records indicated that medication helped to significantly manage them. (Id.)  Plaintiff is simply asking this Court to reconsider her subjective statements without any deference to the ALJ, which the Court is not permitted to do on this record.  Williams, 970 F.2d at 1182.

### iv.  Whether the ALJ Improperly Found that Plaintiff Could Perform Work in the Economy

Plaintiff argues that the ALJ failed to properly rule on her objection in her March 25, 2021 letter that the VE

calculated the wrong number of jobs for the jobs that he proposed in the national economy and that shows that the VE testimony was not reliable.  (ECF 10 at 32-35).  Specifically, the VE testified that there were 15,783 photocopy machine operator positions, 226,956 marker positions, and 20,044 order caller positions available nationally. (R. at 58-59).  Plaintiff's post-hearing submission shows that the VE, using an acceptable search engine to get job numbers, provided the numbers for the amount of full and part-time positions for each job rather than just full-time positions.  (Id. at 391-96).  The number of full-time jobs according to Plaintiff were 9,805 photocopy machine operator jobs, 129,337 marker jobs, and 13,057 order caller jobs.  (Id.)

However, Plaintiff cites no authority for the proposition that the VE may not cite to the number of part-time positions when coming to a number of jobs in the national economy. Indeed, that position seems to be against the position of the courts that have addressed the issue.  Pitts v. Colvin, No. CV 16-434, 2016 WL 6217068, at *4 (W.D. Pa. Oct. 25, 2016) ("[C]ourts have held that ALJs are not limited to considering full-time work in making their determinations. . . . Part-time work may also be considered.") (internal citation omitted); Liskowitz v. Astrue, 559 F.3d 736, 745 (7th Cir. 2009) ("Ruling 96-8p does not say, nor do we interpret it to imply, that a VE

22

may permissibly testify only as to the availability of full-time jobs.").

In addition, assuming without deciding that the inclusion of part-time jobs by the VE was error, the Court finds that it was harmless. Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover."). Even accepting Plaintiff's numbers, there are hundreds of thousands of jobs available in the national economy and that is more than enough for the ALJ to satisfy the step 5 burden. Indeed, the Third Circuit has found that 200 and 569 jobs to be "significant," which shows that the hundreds of thousands of jobs that the VE proposed for Plaintiff were "significant." Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (200 jobs); Ahmad v. Comm'r of Soc. Sec., 531 F. App'x 275, 278 (3d Cir. 2013) (569 jobs); see also Young v. Astrue, 519 F. App'x 769, 772 (3d Cir. 2013) ("[T]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act.").[9]

_____

[9] Because it is the case that even if Plaintiff were correct that the ALJ cannot consider the part-time jobs for the step 5 analysis, there would not be reversible error on this basis, it is also true that any failure by the ALJ to address an objection on that basis would not constitute reversible error. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)("[R]emand is not required here because it would not affect the outcome of the case.").

Separately, the jobs selected by the ALJ are not at odds with the ALJ's conclusion that Plaintiff can do simple tasks because those jobs contain a Reasoning Level 2.  Reasoning Level 2 only requires that a claimant be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations."[10]  One panel of the Third Circuit has held that there is nothing contradictory between jobs with reasoning level two and a limitation to only simple tasks.  Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive."); Lisa C. M. v. Kilolo Kijakazi, No. 3:20-CV-14153, 2022 WL 3273953, at *14 (D.N.J. Aug. 11, 2022) (same).  Indeed, the Third Circuit has declined to craft a bright-line rule in this area.  See Zirnsak v. Colvin, 777 F.3d 607, 618 (3d Cir. 2014) ("The review of the aforementioned cases demonstrates that there is no bright-line rule stating whether there is a per se conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work.").

Here, the ALJ extensively explained why any apparent

---

[10] Appendix C: Components of the Definition Trailer, DICTIONARY OF OCCUPATIONAL TITLES, available at https://occupationalinfo .org/appendxc_1.html.

conflict between the limitation to simple tasks and the
designation of the jobs at Reasoning Level 2 was not a true
conflict.  He explained that when cross-referencing a
designation to simple tasks in the regulations against the
designations in the Dictionary of Occupational Titles (the
"DOT"), he found no conflict.  (R. at 28 ("Using the skills
level definitions in 20 CFR 404.1568 and 416.968, unskilled work
corresponds to an SVP of 1-2 in the DOT. Although there may be a
reason for classifying an occupation's skill level differently
than in the DOT, the regulatory definitions of skill levels are
controlling")).  The Court finds this analysis sufficient to
satisfy its review.  Further, it fits with the ALJ's discussion
of Plaintiff's abilities and limitations in the rest of his
opinion.  (See id. at 22-27).  Thus, the Court discerns no error
at step 5.

> **v.  Whether the Appointment of the Commissioner Was
> Unconstitutional Such that the Decision by the Social
> Security Administration in this Case Was
> Constitutionally Defective**

The Plaintiff alleges that the Social Security proceedings
in their entirety were constitutionally defective because of the
appointment of Andrew Saul as Commissioner of the Social
Security Administration.  (ECF 10 at 36).  The parties agree
that 42 U.S.C. § 902(a)(3) violates the separation of powers
clause to the extent that it is construed as limiting the

President's authority to remove the Commissioner without cause. (ECF 11 at 25).  Plaintiff argues that because of this violation, the appointed ALJ and the Appeals Council did not have constitutional authority to render a decision on Plaintiff's case.  (ECF 10 at 36-37).

While Plaintiff argues to the contrary, the Supreme Court has already stated that there is no basis to conclude that an appropriately appointed official does not have the authority to carry out the functions of the office, even if his or her position was designed by Congress to impermissibly impinge on the President's right to removal at will.  Collins v. Yellen, 141 S. Ct. 1761, 1787-88, 1788 n.23 (2021) (plurality opinion) ("As we have explained, there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of his office.").

> The Appointment Clause cases do not help the shareholders either.  These cases also ask whether an officer can lawfully exercise the statutory power of his office at all in light of the rule that an office must be properly appointed before he can legally act as an officer. . . Here, "[a]ll the officers who headed the FHFA during the time in question were properly appointed."  There is thus no barrier to them exercising power in the first instance.

Id. at 1793 (Thomas, J. concurring) (citations omitted).

Similarly, the Court addressed that the idea that the "taint" of the "mere existence" of the offending removal provision flows down through the executive power exercised by

the officer was unavailing.  Id. at 1788, 1793 ("[W]e have not
held that a misunderstanding about authority results in a
constitutional defect where the action was otherwise lawful.").

The plurality opinion addresses the most pressing issue:
that there must be an adequate nexus between the
unconstitutional provision and the case at bar.  See id. at 1779
("for purposes of traceability, the relevant inquiry is whether
the plaintiffs' injury can be traced to 'allegedly unlawful
conduct' of the defendant, not to the provision of the law that
is challenged.").  So too do the concurring opinions of Justices
Thomas and Kagan: "I write separately because I worry that the
Court and the parties have glossed over a fundamental problem
with removal-restriction cases such as these: The Government
does not necessarily act unlawfully even if a removal
restriction is unlawful in the abstract."  Id. at 1789 (Thomas,
J. concurring).  Similarly, "[w]hen an agency decision would not
capture a President's attention, his removal authority could not
make a difference — and so no injunction should issue."  Id. at
1802 (Kagan, J. concurring).  See also Mor v. Kijakazi, No. 21-
1730, 2022 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022).

The Court must now consider, then, whether Plaintiff has
sufficiently established a concrete injury inflicted by 42
U.S.C. § 902(a)(3) upon Plaintiff through the ALJ's final
decision of finding the Plaintiff not disabled and the Appeals

27

Council's denial of review.  Without standing, there is no "case or controversy" to be decided.  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  Plaintiff argues that both the ALJ and the Appeals Council have inflicted the harm of unconstitutional proceedings against Plaintiff and the subsequent denial of benefits.  (ECF 10 at 6-7).

First, the Third Circuit has already expressly stated that "[n]o statutory authority, (the source of the district court's review) authorizes [district courts] to review the Appeals Council decision to deny review," because the Appeals Council exercises "'certiorari-type jurisdiction,'" and renders an ALJ's decision final under the Social Security Act.  Kwasnik v. Kijakazi, No. 21-08573, 2022 U.S. Dist. LEXIS 116234, at * 30 (D.N.J. Jun. 30, 2022); see also Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).  Thus, this Court does not have the authority to examine the Appeals Council's decision.

Second, the Plaintiff fails to establish a causal connection between the harm of the ALJ's decision and the impermissible removal provision.  As discussed above, and as found by other courts, the mere "taint" of the head of an agency does not establish a sufficient nexus for standing.  See Kwasnik v. Kijakazi, No. 21-08573, 2022 U.S. Dist. LEXIS 116234, at *33-34 (D.N.J. Jun. 30, 2022) (citing Andino v. Kijakazi, No. 21-2852, 2022 WL 1135010, at *6-7 (E.D. Pa. April 18, 2022)

28

("Justice Alito specified in Collins that Seila Law's holding on
standing 'does not mean that actions taken by such an officer
are void ab initio and must be undone.' . . . [I]t is not
difficult to see that Collins requires Andino to demonstrate a
nexus between the decision denying her disability benefits and
42 U.S.C. § 902(a)(3)."); Mor v. Kijakazi, No. 21-1730, 2022 WL
73510, at *5 (D.N.J. Jan. 7, 2022) ("Plaintiff fails to point to
any connection between the Commissioner's removal under Section
902(a)(3) and the ALJ's decision (or any other action in this
case). As a result, the requisite nexus is not met, and the
Court denies Plaintiff's appeal on this ground."); see also Ford
v. Kijakazi, No. 21-1432, 2022 WL 1203731, at *6 (E.D. Pa. Apr.
22, 2022) (denying separation of powers claim because plaintiff
failed to show "harm caused by Saul exercising authority he
retained by virtue of the unconstitutional removal clause.").

    As Justice Kagan noted in Collins, for the Court to redress
an injury due to an agency decision made by an agency headed by
a single executive subject to an impermissible for-cause removal
protection, that agency's decision would need to "capture a
President's attention." Collins, 141 S. Ct. at 1801-02.
Justice Kagan specifically noted that the "mass" of Social
Security Administration decisions would likely not create a harm
that would allow for redress. Id. ("[O]nly when the President's
inability to fire an agency head affected the complained-of

decision.  Only then is relief needed to restore the plaintiffs to the position they 'would have occupied in the absence' of the removal problem.").

Plaintiff points to a statement by President Biden which purports to indicate that President Biden wanted to fire Commissioner Saul early on in his tenure as president.  (ECF 14 at 9-10).  Plaintiff points to the below quote in particular to demonstrate that President Biden wanted to fire the Commissioner from the time of the President's inauguration on January 20, 2021:

> Since taking office, Commissioner Saul has undermined and politicized Social Security disability benefits, terminated the agency's telework policy that was utilized by up to 25 percent of the agency's workforce, not repaired the SSA's relationships with relevant Federal employee unions including in the context of COVID-19 workplace safety planning, reduced due process protections for benefits appeals hearings, and taken other actions that run contrary to the mission of the agency and the President's policy agenda.

Id.[11]

---

[11] The Court notes that this quote came from a Washington Post article dated July 11, 2021.  The quote itself, credited to the White House, was not dated within the article.  See Lisa Rein, Biden fires head of Social Security Administration, a Trump holdover who drew the ire of Democrats, WASHINGTON POST, July 11, 2021 at https://www.washingtonpost.com/politics/andrew-saul-social-security-/2021/07/09/c18a34fa-df99-11eb-a501-0e69b5d012e5_story.html.

First, these harms listed in the news article quote are
general and do not show the required concrete, personal, and
causal harm required to establish standing.  To establish
standing, "a plaintiff must show that it has suffered 'an injury
in fact' that is 'fairly traceable' to the defendant's conduct
and would likely be 'redressed by a favorable decision.'"
Collins, 141 S. Ct. at 1779 (quoting Lujan v. Defenders of
Wildlife, 504 U.S. 555, 560-61 (1992)).  "[F]or purposes of
traceability, the relevant inquiry is whether the plaintiffs'
injury can be traced to 'allegedly unlawful conduct' of the
defendant, not to the provision of law that is challenged."[12]
Id. (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)); see
also Kwasnik v. Kijakazi, No. 21-08537, 2022 WL 2358424, at *11
(D.N.J. Jun. 30, 2022).

Plaintiff does not point to a specific legal application,
policy, or decision that the ALJ or Appeals Council rendered
that had any effect on this case except for the overall denial
of benefits, which as explained above was sufficiently supported
by the record.  See Johnson v. Kijakazi, No. 21-2372, 2022 U.S.
Dist. LEXIS 114766, at *36 (E.D. Pa. Jun. 28, 2022) ("Plaintiff

---

[12] The fact that President Biden ultimately fired Commissioner
Saul in July of 2021, (ECF 14 at 9-10), does not change the
calculus because Plaintiff has not pointed to an injury that can
be traced to the unlawful appointment of Commissioner Saul.

31

has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims.  Plaintiff thus fails to show how or why [the unlawful] removal clause possibly harmed her.") (internal citations omitted).

The unconstitutionally of 42 U.S.C. § 902(a)(3)'s removal restriction simply does not void the ALJ's decision in this mine-run case.  The adjudication process and determination by the Social Security Administration remains valid.[13]

**III. Conclusion**

For the reasons expressed above, the Court will affirm the decision of the ALJ.

An accompanying Order will be issued.


Date: November 8, 2022              s/  Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.

---

[13] Because the Court finds no error warranting remand in the ALJ's decision, the Court rejects Plaintiff's argument that the Court should summarily grant her benefits.  (ECF 10 at 38-39).